# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

STEVEN H. COPAS,                                    Case No. 1:13-cv-549
      Plaintiff,                                 Litkovitz, M.J.

    vs.

COMMISSIONER OF                                     **ORDER**
SOCIAL SECURITY,
      Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and supplemental security income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 14), and the

Commissioner's response in opposition (Doc. 19).

## I. Procedural Background

Plaintiff protectively filed applications for DIB and SSI in June and November 2010,

respectively, alleging disability since February 8, 2009,[1] due to four stents in his heart, a cardiac

monitor, lung problems and nerve damage in his left leg. These applications were denied

initially and upon reconsideration. Plaintiff requested and was granted a *de novo* hearing before

administrative law judge (ALJ) George Gaffaney. Plaintiff appeared at the ALJ hearing with a

non-attorney representative, and both plaintiff and a vocational expert (VE) testified at the ALJ

hearing. On May 29, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI

---

[1]Plaintiff amended his alleged onset date of disability to November 5, 2010. (Tr. 182-83, 245).

applications.  Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)

(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the

sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2004).  Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act
> through December 31, 2015.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since November
> 5, 2010, the amended alleged onset date (20 CFR 404.1571 et seq., and 416.971 et
> seq.).
>
> 3. The [plaintiff] has the following severe impairments: coronary artery disease
> (CAD) status post stents and angioplasty, chronic heart failure, and chronic
> obstructive pulmonary disease (COPD) (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that
> meets or medically equals the severity of one of the listed impairments in 20 CFR
> Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
> 416.920(d), 416.925 and 416.926).
>
> 5. The [plaintiff] has the residual functional capacity to perform a range of light
> work, as defined in 20 CFR 404.1567(b) and 416.967(b).  In terms of exertional
> limitations, the [plaintiff] is able to lift twenty pounds occasionally and ten
> pounds frequently.  The [plaintiff] can sit for six hours and stand for six hours in
> an eight-hour workday.  The [plaintiff] cannot walk greater [than] one hundred
> yards at a time.  Regarding environmental limitations, the [plaintiff] can have only
> occasional exposure to extremes of cold, heat, and direct sunlight.[1]

---

[1] The ALJ defined "occasionally" to mean 2 hours out of an 8-hour workday and "frequently" to mean 6 hours out
of an 8-hour workday.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . . 1959 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from November 5, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co.*

---

[2] Plaintiff's past relevant work was as a production worker and housekeeper. (Tr. 21).
[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 5,200 unskilled light jobs in the regional economy and 220,000 unskilled light jobs in the national economy such as assembler, laundry sorter, and sterilization clerk. (Tr. 22).

4

*v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ erred by failing to properly consider the medical source opinions; and (2) the ALJ erred by failing to properly assess plaintiff's credibility. (Doc. 14).

**1. Whether the ALJ did erred in weighing the medical source opinions.**

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

5

1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always

6

give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)(1)).[4] *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p, 1996 WL 374188 (1996)). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

The opinion of a non-treating but examining source is entitled to less weight than the opinion of a treating source, but is generally entitled to more weight than the opinion of a source who has not examined the claimant. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). When deciding the weight to give a non-treating source's opinion, the ALJ should consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers

---

[4] Title 20 C.F.R. §§ 404.1527, 416.927 were amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion that were previously found at §§ 404.1527(d) and 416.927(d) are now found at §§ 404.1527(c), 416.927(c).

7

all of the pertinent evidence in the record, including the opinions of treating and other examining sources.  20 C.F.R. §§ 404.927(c)(3), 416.927(c)(3).

Here, two treating physicians gave medical opinions as to the degree of plaintiff's functional impairment from a cardiac standpoint.  Plaintiff suffers from severe coronary artery disease status post stents and angioplasty, chronic heart failure, and chronic obstructive pulmonary disease. [5]  Dr. Sriharsha Velury, M.D., completed a "Cardiac Impairment Questionnaire" indicating that he had treated plaintiff every three to six months beginning in March 2009, with the most recent examination occurring on September 15, 2011.  (Tr. 467-73). Dr. Velury diagnosed plaintiff with a "New York Heart Association/AHA functional classification" of "CHF Class III."  (Tr. 468).   Under the New York Heart Association (NYHA) Classification system, patients with cardiac disease are rated Class I (least severe) through Class IV (most severe) based on functional capacity.  Class III patients have "cardiac disease resulting in marked limitation of physical activity.  They are comfortable at rest.  Less than ordinary activity causes fatigue, palpitation, dyspnea, or anginal pain."  *See* http://my.americanheart.org/ professional/StatementsGuidelines/ByPublicationDate/ PreviousYears/Classification-of-Functional-Capacity-and-Objective-Assessment_UCM_ 423811_Article.jsp.  Class III patients display objective evidence of moderately severe cardiovascular disease.  *Id*.  Dr. Velury identified the clinical findings that supported his assessment as anginal equivalent pain, shortness of breath, fatigue and weakness, and he listed plaintiff's primary symptoms as chest pain and dyspnea.  (Tr. 468-69).  He reported that plaintiff's cardiac symptoms were precipitated by

---

[5] After suffering a heart attack in February 2009, plaintiff underwent left heart catheterization and stent placement (Tr. 378-83), and he subsequently underwent implantation of an implantable loop recorder in March 2009 for indications of recurrent syncope.  (Tr. 303).  A myocardial perfusion study performed in April 2011 was abnormal and showed "wall motion- mild global hypokinesis" and an EF of 44%.  (Tr. 454).

physical exertion and hot/cold weather. (Tr. 470). Dr. Velury opined that plaintiff's symptoms would likely increase if he were placed in a competitive work environment. (*Id.*). He further reported that plaintiff's "[medications] are working well." (*Id.*). Dr. Velury assessed plaintiff as able to sit 4 out of 8 hours, stand 2 out of 8 hours, and lift/carry 20 pounds occasionally. (Tr. 471). Dr. Velury restricted plaintiff from exposure to fumes, gases, dust, temperature extremes and heights and imposed limitations against pushing, pulling, kneeling, bending and stooping. (Tr. 472). He opined that plaintiff would have good days and bad days, he would miss work two to three times per month, and he was incapable of even "low stress" work. (Tr. 471). Dr. Velury described plaintiff's prognosis as "fair." (Tr. 468).

Dr. Jignesh Shah, M.D., reported in a progress note dated March 29, 2011, that plaintiff was in NYHA Class III and that he merited an "icd" (implantable cardiac defribillator) if an echocardiogram showed his ejection fraction was less than 35%. (Tr. 437-38). Dr. Shah did not assess any functional limitations in his progress note.

The ALJ declined to give the opinions of Drs. Velury and Shah controlling weight:

First, the opinions are not given controlling weight because they are inconsistent with the objective medical evidence and the clinical examination findings (SSR 96-2p) (See, supra, Section 5(A)-(B)). Second, the opinions are inconsistent with the claimant's activities of daily living (See, supra, Section 5(C)). Third, the opinion is internally inconsistent. While Dr. Velury indicated a Class III limitation, he also indicated a "fair" prognosis and "meds are working well." Fourth, the opinion is inconsistent with the claimant's pattern of treatment. Over the course of treatment by the physicians, the physicians never made a limitation on the claimant's ability to stand, walk, lift or carry, which are integral parts of the opinion. There is no mention of any functional limitations consistent with the severity discussed in this opinion. Given the inconsistency with the longitudinal record, the physicians' opinions are not entitled to significant weight.

(Tr. 20-21). The ALJ did not elaborate any further on the opinions of Drs. Velury and Shah.

Instead of crediting the treating physicians' opinions, the ALJ gave "great weight" to the January 22, 2011 opinion of non-examining state agency physician Dr. W. Jerry McCloud, M.D., who found that plaintiff was limited to light work based on his coronary artery disease (CAD) and chronic obstructive pulmonary disease (COPD), and to the May 24, 2011 opinion of Dr. Steve E. McKee, M.D., affirming Dr. McCloud's assessment.  (Tr. 20, citing Tr. 48-63, 66-83). The ALJ stated that "Dr. McCloud's opinion is given great weight because it is consistent with the objective evidence in record and clinical examination findings (See, supra, Section 5(A)-(B))."  (Tr. 20).  Based on plaintiff's testimony, the ALJ added restrictions limiting plaintiff to walking only one hundred yards at a time and to occasional exposure to temperature extremes and direct sunlight.  (Tr. 20).

Plaintiff alleges that the ALJ failed to weigh the opinions of Drs. Velury and Shah in accordance with the treating physician rule, 20 C.F.R. §§ 404.1567(c)(2), 419.627(c)(2), and Social Security Ruling 96-2p.  Plaintiff contends that the ALJ's decision to give less than controlling weight to these treating physicians' opinions is not supported by substantial evidence because the ALJ did not consider all of the regulatory factors when weighing their opinions; specifically, plaintiff alleges that the ALJ gave no indication that he considered the physicians' specialization in cardiovascular disease as well as plaintiff's treatment relationship with Dr. Velury, who indicated he had seen plaintiff every three to six months between March 2009 and September 2011.  (Doc. 14 at 8-9, citing Tr. 468).  Plaintiff further alleges that the reasons the ALJ did give for discounting these physicians' opinions are not supported by the evidence of record.  (*Id.* at 8).  Plaintiff's arguments are well-taken.

Sections 5(A) and (B) of the ALJ's decision summarize the objective and clinical evidence of plaintiff's heart and pulmonary impairments.   The ALJ found the treating cardiologists' opinions were "inconsistent" with the objective and clinical evidence, citing generally to "Section 5(A)and (B)" in support of this conclusion.  (Tr. 21).  In contrast, the ALJ found the non-examining doctors' opinions were "consistent" with the objective and clinical evidence, again citing generally to "Section 5(A) and (B)" of his decision.  (Tr. 20).

The ALJ relied on the clinical findings set forth in Section 5(B) to support his finding that the treating cardiologists' opinions were not entitled to significant weight.  (Tr. 21, citing Tr. 19-20).  The Commissioner argues that the ALJ's decision in this regard is supported by substantial evidence because progress notes for many months document no complaints of chest pains, palpitations, dizziness, and leg swelling, and no gallops, friction rubs, or murmers in other months.  (Doc. 19).  Yet, plaintiff's reports of chest pain and other heart symptoms are noted intermittently throughout the record, which appear to be consistent with Dr. Velury's opinion that plaintiff's symptoms occur intermittently and are precipitated by physical exertion, stress, and hot and cold weather.  (Tr. 469-72).  Nor is there any indication in the record that the intermittent nature of plaintiff's symptoms is inconsistent with Class III chronic heart failure, and the ALJ never made such a finding.

In addition, the ALJ's decision never articulates how the objective findings detract from the treating cardiologists' opinions, but support the conclusions of the non-examining state agency physicians.   The ALJ stated that the "objective evidence does not establish more than a range of light limitation" and cited to the following evidence of heart disease:

[T]he claimant suffered a myocardial infarction (heart attack) in February 2009 (Ex. 3F).  In March 2009, an electrophysiology study revealed that the claimant had mild ischemic cardiomyopathy with a left ventricular ejection fraction of 44%

11

(Ex. 1F, 3F). Subsequently, the claimant received left heart catheterization, coronary angiography, LAD stenting and an implantable loop recorder (Ex. 2F). In September 2011, the claimant had an ejection fraction of 44% (Ex. 7F).

(Tr. 19, Section 5(A)). These are the same objective findings the ALJ relied on to give "great weight" to the non-examining physicians and less weight to the treating physicians. However, the ALJ does not explain why these objective findings are "consistent" with an ability to stand for 6 hours (as the non-examining physicians found), yet "inconsistent" with the ability to stand for only 2 hours in an 8-hour workday (as plaintiff's treating cardiologist, Dr. Velury, found). This essentially amounts to a difference of opinion between the non-examining state agency doctors and plaintiff's treating cardiologists based on essentially the same evidence [6] without any explanation by the ALJ as to why this evidence is consistent or inconsistent with the opinions of the non-examining and treating doctors respectively. This difference of opinion is a question of degree that goes to the heart of the treating physician rule in this Circuit. When the issue is assessing whether plaintiff can stand 2 hours (Dr. Velury's opinion) or 6 hours (Dr. McCloud's opinion) in an 8-hour work-day, the role of the treating physician is especially important as the treating specialist has the most expertise and familiarity with the patient's treatment and responses over a length of time. Yet, there is no indication in the ALJ's decision that he considered all of the regulatory factors when weighing the treating cardiologists' opinions, including the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, and any specialization of plaintiff's treating physicians in finding that the treating cardiologists' opinions were "not entitled to significant weight." *Blakley,* 581 F.3d at 406 (citing former 20 C.F.R. § 404.1527(d)). The ALJ's failure to consider

---

[6] The non-examining physicians did not review the September 2011 ejection fraction of 44% or clinical findings as these were submitted after the reconsideration stage of the administrative review process.

12

the regulatory factors is particularly troubling in light of Dr. Velury's specialization in cardiology, his over two-year treatment of plaintiff for chronic heart failure, and the frequency of examinations every three to six months.

In the absence of any explanation to support the ALJ's "reasons" for finding the evidence is "Sections 5(A) and (B)" consistent with the opinions of the state agency physicians, but inconsistent with the opinions of plaintiff's treating doctors, the Court is unable to discern the basis for the ALJ's decision to credit the non-examining physicians' opinions while discounting those of plaintiff's treating cardiologists. According to the ALJ, both sets of physicians relied on the same evidence, but both reached conflicting conclusions on plaintiff's functional capacity. As recently explained by the Sixth Circuit under similar circumstances:

> Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Gayheart*, 710 F.3d at 377. Given the ALJ's failure to articulate why the objective and clinical evidence listed in Sections 5(A) and 5(B) of his decision is inconsistent with the treating cardiologists' assessments of plaintiff's functional capacity and his failure to apply all of the regulatory factors in weighing such opinions, the Court is unable to perform a meaningful review of whether the ALJ properly applied the treating physician rule under 20 C.F.R §§ 404.1527(c)(2), 416.927(c)(2). *See Gayheart,* 710 F.3d at 377 ("The failure to provide 'good reasons' for not giving [the treating physician's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the

heart of this regulation.") (citing *Wilson,* 378 F.3d at 544). *See also Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.").

Nevertheless, the Commissioner contends the ALJ properly relied on the opinions of the non-examining physicians because they are considered experts in the Social Security disability programs and were entitled to appropriate weight to the extent they were supported by the evidence in the record. However, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his or her opinion. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Both Drs. McCloud and McKee concluded that plaintiff was capable of light work activity. Both were asked to "explain [the] exertional limitations and *how and why* the evidence supports your conclusion. Cite specific facts upon which your conclusions are based." (Tr. 52, 60, 70, 79) (emphasis added). Both gave identical "explanations": "Limited due to CAD and COPD." (*Id.*). These "explanations" are virtually meaningless and do not provide a basis for understanding why the medical evidence supports their determinations of light work, and not the treating physicians' more limited assessments. *See Foxx v. Comm'r of Soc. Sec.,* No. 1:11-cv-209, 2012 WL 3132666, at *3, *5 (S.D. Ohio Aug. 1, 2012) (Barrett, J.) ("[A] non-examining physician's opinion may be accepted over that of an examining physician when the non-examining physician clearly states the reasons that his opinions differ from those of the examining physicians.") (quoting *Lyons v. Soc. Sec.,* 19 F. App'x 294, 302 (6th Cir. 2001)). In the absence of any explanation why the non-examining

14

state agency physicians believed the medical evidence supported a finding of light work, these opinions do not provide substantial support for the ALJ's decision that plaintiff can perform light work.

Finally, the remaining "reasons" posited by the ALJ in weighing the treating cardiologists' opinions suffer from a similar articulation defect. The ALJ failed to explain how the opinions of Drs. Velury and Shah were not consistent with plaintiff's daily activities, or why Dr. Velury's classification of plaintiff's cardiac condition as Class III, signifying marked limitations, was somehow inconsistent with a "fair prognosis" or his comment that "meds are working well." (Tr. 21). The ALJ also determined that Dr. Velury's opinion was inconsistent with plaintiff's "pattern of treatment" because Dr. Velury's treatment notes do not include limitations on plaintiff's ability to stand, walk, lift or carry. (Tr. 21). It is not uncommon for progress notes to exclude specific functional limitations like those found in a formal RFC assessment and the ALJ does not articulate why the omission of such limitations intermittently during the course of treatment reduces the credibility of Dr. Velury's RFC opinion.

The ALJ here failed to provide "good reasons" that are "sufficiently specific" to make clear to the Court the weight the ALJ gave the opinions of plaintiff's treating cardiologists and the reasons for that weight. Social Security Ruling 96-2p; *see also Wilson,* 378 F.3d at 544. An ALJ's failure to follow this requirement of providing good reasons "*for explaining precisely how* those reasons affected the weight accorded the [physician's] opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (*citing Wilson,* 378 F.3d at 544) (emphasis added). Accordingly, the ALJ's decision must be reversed and remanded for further proceedings.

15

**2. Whether the ALJ erred in discounting plaintiff's credibility.**

Plaintiff also alleges the ALJ erred in assessing his credibility. As stated above, the undersigned orders that this matter be remanded because the ALJ failed to provide good reasons for the weight given to the treating cardiologists' opinions. As resolution of this issue on remand may impact the remainder of the ALJ's sequential evaluation, including his assessment of plaintiff's credibility, it is not necessary to address plaintiff's credibility argument. *See Trent v. Astrue,* No. 1:09cv2680, 2011 WL 841529, at *7 (N.D. Ohio Mar. 8, 2011). In any event, even if plaintiff's argument had merit, the outcome would be the same, *i.e.,* a remand for further proceedings and not an outright reversal for benefits.

**III. This matter is reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Sec'y of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994). This matter is reversed and remanded for further proceedings with instructions to the ALJ to re-weigh the opinion evidence from plaintiff's treating cardiologists in accordance with the treating physician rule; to reconsider plaintiff's credibility and RFC; and for further medical and vocational development as warranted.

**IT IS THEREFORE ORDERED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings

pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: _8/22/14_

_Karen L. Litkovitz_
Karen L. Litkovitz
United States Magistrate Judge

17